UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
OXFORD UNIVERSITY PRESS, INC.,
SAGE PUBLICATIONS, INC., and
JOHN WILEY & SONS, INC.,                              Civil Action No. 07-CV-12731

                       Plaintiffs,          Hon. Avern Cohn

vs.
                                      Magistrate Virginia Morgan

EXCEL RESEARCH GROUP, LLC d/b/a
EXCEL TEST PREPARATION,
COURSEPACKS, & COPIES and
NORMAN MILLER, individually,

                        Defendants.
_____/

## AMENDED COMPLAINT

This is an action for infringement of numerous copyrights belonging to plaintiffs,

in violation of Title 17 of the U.S. Code.  Plaintiffs complain of defendants as follows:

### Parties

1.   Plaintiff Blackwell Publishing, Inc. ("Blackwell") is a Delaware corporation

having its principal place of business at 350 Main Street, Malden, Massachusetts 02148.

It is a subsidiary of Plaintiff John Wiley & Sons, Inc. It is engaged in the business of

publishing books and journals in medicine, the social sciences and other fields, including

but not limited to those specifically identified in this action.

2.   Plaintiff Elsevier, Inc. ("Elsevier) is a business corporation organized and

existing under the laws of New York, and having a place of business at 30 Corporate

Dockets.Justia.com

Drive, Suite 400, Burlington, MA 01803. It is engaged in the business of publishing scholarly books and journals in many fields of science and social science, including but not limited to those specifically identified in this action.

3.    Plaintiff Oxford University Press, Inc. ("OUP") is a non-profit corporation organized and existing under the laws of Delaware and having its principal place of business at 198 Madison Avenue, New York, NY 10016.  It publishes numerous books and journals in many fields, including but not limited to those specifically identified in this action.

4.    Plaintiff Sage Publications, Inc. ("Sage") is a Delaware corporation having its principal place of business at 2455 Teller Road, Thousand Oaks, CA 91320.  It is engaged in the publication of books and journals in many fields, including but not limited to those identified in this action.

5.    Plaintiff John Wiley & Sons, Inc. ("Wiley") is a business corporation organized and existing under the laws of New York and having its principal place of business at 111 River Street, Hoboken, New Jersey 07030.  It and its subsidiaries are engaged in the business of publishing books and journals in many fields, including but not limited to those specifically identified in this action.

6.    Defendant Excel Research Group, LLC d/b/a Excel Test Preparation, Coursepacks & Copies ("Excel") is, according to plaintiffs' information and belief, a limited liability company organized and existing under the laws of Michigan with a principal place of business at 1117 S. University, Ann Arbor, MI 48104.  Excel is engaged in the business of reproducing and distributing, for profit, material published and owned by others, including but not limited to the plaintiffs in this action.  One of its

2

primary activities in this regard is the preparation and sale of so-called "coursepacks," in which selected readings for a college or graduate course are reproduced and bound together for use in a particular class.

7.    Defendant Norman Miller ("Miller") is the registered agent for service of process for Excel at 1117 S. University, Ann Arbor, MI 48104.

8.    Defendant Miller is, according to plaintiffs' information and belief, an owner and officer of defendant Excel, and thus has the power and authority to direct the actions of Excel and has a direct financial interest in the copyright infringement described in this Complaint.  At the time of the events described in this Amended Complaint, Miller was doing business under the assumed name Excel Test Preparation, but without having filed a certificate with the Washtenaw County clerk, in violation of Mich.Comp.Laws § 445. Defendant Excel Research Group, LLC was not an entity in good standing and validly existing under the laws of Michigan at the time of the events described herein.

9.    Furthermore, Excel Research Group LLC was not in good standing at the time the original Complaint in this action was filed.  It was only on July 17, 2007, after the original Complaint was filed, that Excel obtained a Certificate of Restoration of Good Standing by filing long overdue annual statements.  *See* corporate records attached hereto as Exhibit A.  Such reinstatement has no retroactive effect as to the claims stated herein. For the sake of simplicity, however, references herein to "Excel" and "defendants" will not distinguish between the LLC now in good standing and the business as constituted prior to reinstatement.  Excel also filed a Certificate of Assumed Name on the same date, presumably in response to plaintiffs' allegations that defendant Miller was transacting

business under an assumed name without having filed a certificate with the Washtenaw County clerk, in violation of Mich.Comp.Laws § 445.1.

**Jurisdiction and Venue**

10.  This Court has jurisdiction over this Amended Complaint under 28 U.S.C. §1338(a).

11.  Venue is appropriate in this Court under 28 U.S.C. §1400(a), the statute governing venue in copyright cases, because the defendants reside or may be found in this District.

**Facts**

12. Plaintiff Blackwell publishes books and journals in many fields.  Among its publications are those identified on Exhibit  B to this Complaint as "Blackwell Items."

13. Plaintiff Elsevier and its affiliated companies in the U.S. and other countries among them publish thousands of scholarly books and journals in the English language alone, all of them in the sciences.  Among its publications are those identified on Exhibit B to this Complaint as "Elsevier Items."

14. Plaintiff OUP publishes scholarly books and journals in many fields. Among its publications are those identified on Exhibit B to this Complaint as "OUP Items."

15. Plaintiff Sage publishes scholarly books and journals in the sciences and social sciences. Among its publications are those identified on Exhibit B to this Complaint as "Sage Items."

16. Plaintiff Wiley, together with its affiliated companies, publishes each year thousands of scholarly books and hundreds of scholarly journals in a number of fields, including but not limited to chemistry, physics, business, and certain social sciences.

4

Among its publications are those identified on Exhibit B to this Complaint under the heading "Wiley Items."

17. The Blackwell Items, Elsevier Items, OUP Items, Sage Items and Wiley Items are sometimes referred to collectively hereinafter as the "Plaintiffs' Works."

18. The books that plaintiffs publish are written or edited by scholars in their respective fields. The journals that plaintiffs publish consist primarily of articles written by scholars in their respective fields and peer-reviewed by fellow scholars.

19. Each plaintiff, as a matter of standard practice, requires that the authors who write its books or contribute to its journals assign copyright to the publisher or grant the publisher exclusive rights of reproduction and distribution within the United States. This enables each plaintiff to seek out the greatest number of markets for the book, article or journal concerned and for its contents, thereby maximizing dissemination of the article, journal or book.

20. Specifically, but without limitation of the foregoing, Blackwell, Elsevier, OUP, Sage and Wiley, or their respective predecessors in interest as the case may be, have, in connection with the books, articles and journals specifically named in this Complaint, secured transfers of copyright (either outright assignments or exclusive licenses) from the authors of the contents thereof. All copyrights thus transferred are those involved in this civil action.

21. Plaintiffs invest heavily in their book and journal publishing programs. Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of journal editorial offices.

22. The revenue from their respective publications represents the majority, in most cases the vast majority, of plaintiffs' respective annual revenues, and is therefore critical to their financial health.

23. Plaintiffs will suffer serious financial injury if their copyrights are not respected. A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books or journals. This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving work.

24. In the case of infringed books, not only the publishers but also the authors receive income from such books, and depriving authors of that income can have serious repercussions for them and their work.

25. As part of their program of protecting their copyrights, plaintiffs routinely register their copyrights. The books and journal issues identified in this Complaint all bear copyright notice, and the plaintiffs' have registered copyright in all of them, as indicated on Exhibit B, with the exception of Wiley's book *Managing Ambiguity and Change* and Elsevier's journals *Journal of Criminal Justice, Information Processing & Management, Interacting with Computers,* and *Social Science and Medicine*, which are non-U.S. works and therefore not required to be registered as a prerequisite to suit. *See* 17 U.S.C. § 411 (registration required only for "United States works," as such term is defined in 17 U.S.C. §101).

26. Defendant Excel is one of a number of commercial companies that offers to provide, on demand, photocopies of individual articles from journals, individual chapters

from books, and other similar material. These companies are known in the marketplace as "copy shops."

27. Like many copy shops in towns and cities where colleges and universities are located, Excel does a substantial business in "coursepacks." The contents of a typical coursepack include journal articles, excerpts from books, and perhaps other printed materials, selected by the teacher of a course as required reading for that course. The teacher delivers the course syllabus, and/or the materials to be copied, to the copy shop. The copy shop copies the portions identified by the teacher, and binds them in a plastic ring binder or other inexpensive binding. The copy shop then sells these coursepacks to students at a profit.

28. The copy shop is required to arrange for permission to copy the materials in coursepacks that it reproduces. Frequently, copy shops do so through an independent agency known as Copyright Clearance Center, Inc. ("CCC"), of Danvers, Massachusetts.

29. In order to expand and facilitate the distribution of their publications and compliance with their copyrights, plaintiffs have licensed CCC, a non-profit intermediary, to authorize commercial photocopying of articles from plaintiffs' journals or excerpts from plaintiffs' books. Any copy shop such as Excel can comply with copyright by reporting its coursepack photocopying activities to CCC and paying a copyright fee for each copy made. CCC in turn reports aggregate licensing information to plaintiffs, and pays plaintiffs the copyright fees collected, less an agreed amount to compensate CCC for its services. Many, if not all, of the plaintiffs will also respond directly to requests for permission to use portions of their materials in coursepacks.

30. Defendants, however, have been engaged in routine and systematic reproduction of materials from plaintiffs' publications, without seeking permission from plaintiffs or from CCC.  This infringement takes the form of (without limitation) coursepacks for courses taught at the University of Michigan. The coursepacks currently known to plaintiffs to contain such material are those identified on Exhibit B.

31. Plaintiffs are informed and believe that defendants do not themselves perform the copying for each of their customers.  Rather, defendants require each student to copy the pages of each coursepack him/herself on Excel's premises, using Excel's copying machines.  This is an explicit attempt to circumvent copyright law. Miller has stated publicly that he believes such an arrangement exempts his business from the rules laid down in past cases involving copy shops making unauthorized coursepacks.  However, by providing the means of reproduction and charging for their use, defendants are just as much engaged in infringement as if their own employees made the copies and their conduct constitutes willful infringement.

## COUNTS 1 -41

## Copyright Infringement

32. Plaintiffs reallege and incorporate herein by reference paragraphs 12-31 of this Complaint.

33. Plaintiffs have identified at least 41 separate and distinct counts of specific unauthorized copying of which plaintiffs have knowledge.  Each instance of unauthorized reproduction and sale of plaintiffs' materials is a separate count in this action.

34. Each infringed work is identified on Exhibit B to this Complaint.  From left to right, the columns of Exhibit B state the number of the count, the coursepack in which the

item of the plaintiffs' was reproduced by defendants without permission, the professor of said course, the title of the material infringed, the chapter or article from the larger book or journal from which such material was copied (if applicable), the author of the material infringed, the date the work was published, the numbers of the pages infringed (if known), and the copyright registration number. All coursepacks identified in Counts 1-41 are for courses taught at the University of Michigan.

35. Plaintiffs are informed and believe that this unauthorized copying is representative of a much larger pattern of unauthorized copying, which when examined will reveal infringements of numerous other works owned by them, and plaintiffs will amend this Complaint to add such works after discovery has occurred.

36. Defendants have at all times have been fully aware of their obligations under copyright law. Defendants' infringement of plaintiffs' copyrights, including but not limited to those set forth on Exhibit B, has been willful.

37. Defendants are responsible in whole or in part for establishing the policies and procedures that have led to the infringing conduct described herein. At all times relevant they have been in a position to control the infringement described in this Complaint, and have had a direct financial stake in the infringing activity.

38. Plaintiffs have suffered substantial harm from defendants' unauthorized conduct. Plaintiffs will continue to suffer harm if defendants are permitted to continue their infringing activities.

### WHEREFORE PLAINTIFFS PRAY THAT THIS HONORABLE COURT:

A. Issue a preliminary order enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation

with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by plaintiffs or any of them, during the pendency of this litigation, except only such reproduction and distribution as may be authorized by plaintiffs or CCC as plaintiffs' agent and only upon payment of the fees required by them;

B. Issue an order permanently enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by plaintiffs or any of them, except only such reproduction and distribution as may be authorized by plaintiffs or CCC as plaintiffs' agent and only upon payment of the fees required by them;

C. Award plaintiffs all of their direct and consequential damages arising from defendants' willful infringement of copyright, whether direct, contributory or vicarious, or in the alternative statutory damages for such infringement in the maximum amount permitted by law;

D. Award plaintiffs an accounting of defendants' profits from such infringement;

E. Award plaintiffs their reasonable attorneys' fees and costs, as provided in 17 U.S.C. §505, and interest as provided by law; and

F. Award plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
OXFORD UNIVERSITY PRESS, INC.,
SAGE PUBLICATIONS, INC.,
JOHN WILEY & SONS, INC.,

Plaintiffs,

By their Attorneys:

PEAR SPERLING EGGAN & DANIELS, P.C.


Dated: July 19, 2007              By:  _/s/ Karl V. Fink_____
                                          Claudia Rast (P40165)
                                          Karl V. Fink (P13429)
                                          Cynthia M. York (P39722)
                                  24 Frank Lloyd Wright Drive
                                  Ann Arbor, Michigan  48105
                                  (734) 665-4441
                                  (734) 665-8788 (fax)
                                  **kfink@psedlaw.com**

                                  **Of Counsel to Plaintiffs:**

                                  William S. Strong, Esq., BBO #483520
                                  Amy C. Mainelli Burke, Esq., BBO#657201
                                  KOTIN, CRABTREE & STRONG, LLP
                                  One Bowdoin Square
                                  Boston, MA 02114
                                  (617) 227-7031
                                  (617) 367-2988 (fax)

**CERTIFICATE OF SERVICE**

Karl V. Fink hereby certifies that on July 19, 2007, he electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to Susan Kornfield, Counsel for Defendant Norman Miller.

Dated: July 19, 2007              By:  _/s/ Karl V. Fink_____
                                       Karl V. Fink (P13429)
                                       24 Frank Lloyd Wright Drive
                                       Ann Arbor, Michigan  48105
                                       (734) 665-4441
                                       (734) 665-8788 (fax)
                                       kfink@psedlaw.com