UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BLACKWELL PUBLISHING, INC., ELSEVIER, INC., OXFORD UNIVERSITY PRESS, INC., SAGE PUBLICATION, INC. and JOHN WILEY & SONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EXCEL RESEARCH GROUP, LLC d/b/a EXCEL TEST PREPARATION, COURSEPACKS & COPIES, and NORMAN MILLER, individually, <br><br> Defendants. | Case No. 07-CV-12731 <br><br> Hon. Avern Cohn <br><br> Magistrate Virginia Morgan <br><br> **Answer And Defenses of Defendants Excel Research Group, LLC d/b/a Excel Test Preparation, Coursepacks, & Copies, and Norman Miller** <br><br> **JURY DEMAND** |

/

| | |
|---|---|
| Karl V. Fink (P13429) <br> Pear Sperling Eggan & Daniels, P.C. <br> 24 Frank Lloyd Wright Drive <br> Ann Arbor, Michigan  48105 <br> Telephone:  (734) 665-4441 <br> *Attorneys for Plaintiffs* | Susan M. Kornfield (P41071) <br> Alan N. Harris (P56324) <br> BODMAN LLP <br> 201 South Division Street, Suite 400 <br> Ann Arbor, Michigan  48104 <br> Telephone:  (734) 761-3780 <br> Facsimile:   (734) 930-2494 <br> *Attorneys for Defendants* |

/

### ANSWER TO AMENDED COMPLAINT AND DEFENSES

Defendants, Excel Research Group, LLC d/b/a Excel Test Preparation, Coursepacks & Copies, and Mr. Norman Miller ("Defendants") by and through their attorneys Bodman LLP, answer plaintiff's Amended Complaint as follows:

**Parties**

1.  Plaintiff Blackwell Publishing, Inc. ("Blackwell") is a Delaware corporation having its principal place of business at 350 Main Street, Malden, Massachusetts 02148.  It is a

subsidiary of Plaintiff John Wiley & Sons, Inc. It is engaged in the business of publishing books and journals in medicine, the social sciences and other fields, including but not limited to those specifically identified in this action.

**ANSWER:** Defendants are generally aware that Blackwell is a publisher and believe that it engages in the publishing of books and journals. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1.

2. Plaintiff Elsevier, Inc. ("Elsevier") is a business corporation organized and existing under the laws of New York, and having a place of business at 30 Corporate Drive, Suite 400, Burlington, MA 01803. It is engaged in the business of publishing scholarly books and journals in many fields of science and social science, including but not limited to those specifically identified in this action.

**ANSWER:** Defendants are generally aware that Elsevier is a publisher and believe that it engages in the publishing of books and journals. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 2.

3. Plaintiff Oxford University Press, Inc. ("OUP") is a non-profit corporation organized and existing under the laws of Delaware and having its principal place of business at 198 Madison Avenue, New York, NY 10016. It publishes numerous books and journals in many fields, including but not limited to those specifically identified in this action.

**ANSWER:** Defendants are generally aware that Oxford University Press is a publisher and believe that it engages in the publishing of books and journals. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3

4. Plaintiff Sage Publications, Inc. ("Sage") is a Delaware corporation having its principal place of business at 2455 Teller Road, Thousand Oaks, CA 91320. It is engaged in the publication of books and journals in many fields, including but not limited to those identified in this action.

**ANSWER:**   Defendants are generally aware that Sage is a publisher and believe that it engages in the publishing of books and journals.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4.

5.    Plaintiff John Wily & Sons, Inc. ("Wiley") is a business corporation organized and existing under the laws of New York and having its principal place of business at 111 River Street, Hoboken, New Jersey 07030.  It and its subsidiaries are engaged in the business of publishing books and journals in many fields, including but not limited to those specifically identified in this action.

**ANSWER**:   Defendants are generally aware that Wiley is a publisher and believe that it engages in the publishing of books and journals.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5.

6.    Defendant Excel Research Group, LLC d/b/a Excel Test Preparation, Coursepacks & Copies ("Excel") is, according to plaintiffs' information and belief, a limited liability company organized and existing under the laws of Michigan with a principal place of business at 1117 S. University, Ann Arbor, MI  48104.  Excel is engaged in the business of reproducing and distributing, for profit, material published and owned by others, including but not limited to the plaintiffs in this action.  One of its primary activities in this regard is the preparation and sale of so-called "coursepacks," in which selected readings for a college or graduate course are reproduced and bound together for use in a particular class.

**ANSWER:**   Defendants admit the allegations of the first sentence of paragraph 6.  Defendants deny the remaining allegations of paragraph 6.  Answering further, Defendant Excel has provided photocopying facilities to the public, and in particular to students and professors, for nine (9) years, and it is the public, in particular the students, who make the copies of their professors' materials, who sign a written form confirming that they are students in a particular

course and that they are making educational copies. It is the students who decide whether they wish Excel to bind together the materials the students have copied.

7. Defendant Norman Miller ("Miller") is the registered agent for service of process for Excel at 1117 S. University, Ann Arbor, MI 48104.

**ANSWER:** Defendants admit the allegations of paragraph 7.

8. Defendant Miller is, according to plaintiff's information and belief, an owner and officer of defendant Excel, and thus has the power and authority to direct the actions of Excel and has a direct financial interest in the copyright infringement described in this Complaint. At the time of the events described in this Amended Complaint, Miller was doing business under the assumed name Excel Test Preparation, but without having filed a certificate with the Washtenaw County clerk, in violation of Mich.Comp.Laws § 445. Defendant Excel Research Group, LLC was not an entity in good standing and validly existing under the laws of Michigan at the time of the events described herein.

**ANSWER:** Defendants admit that Mr. Norman Miller is the owner and an officer of defendant Excel, and has the power and authority to direct the actions of Excel. Defendants state that remaining allegations of paragraph 8 state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the remaining allegations of paragraph 8.

9. Furthermore, Excel Research Group, LLC was not in good standing at the time of the original complaint in this action was filed. It was only on July 17, 2007, after the original Complaint was filed, that Excel obtained a Certificate of Restoration of Good Standing by filing long overdue annual statements. *See* corporate records attached hereto as Exhibit A. Such reinstatement has no retroactive effect as to the claims stated herein. For the sake of simplicity, however, references herein to "Excel" and "defendants" will not distinguish between the LLC now in good standing and the business as constituted prior to reinstatement. Excel also filed a

Certificate of Assumed Name on the same date, presumably in response to plaintiffs' allegations that defendant Miller was transacting business under an assumed name without having filed a certificate with the Washtenaw County clerk, in violation of Mich.Comp.Laws § 445.1.

**ANSWER:** Defendants admit that Excel filed certain Annual Reports on July 17, 2007 and that the State of Michigan had identified the company as "active." Excel admits that it filed a Certificate of Assumed Name on about July 17, 2007. The remaining allegations of paragraph 9 state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the remaining allegations of paragraph 9.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this Amended Complaint under 28 U.S.C. § 1338(a).

**ANSWER:** Defendants admit the allegations of paragraph 10.

11. Venue is appropriate in this Court under 28 U.S.C. §1400(a), the statute governing venue in copyright cases, because the defendants reside or may be found in this District.

**ANSWER:** Defendants admit the allegations of paragraph 11.

12. Plaintiff Blackwell publishes books and journals in many fields. Among its publications are those identified on Exhibit B to this Complaint as "Blackwell Items."

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph12.

13. Plaintiff Elsevier and its affiliated companies in the U.S. and other countries among them publish thousands of scholarly books and journals in the English language alone, all of them in the sciences. Among its publications are those identified on Exhibit B to this Complaint as "Elsevier Items."

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 13.

14. Plaintiff OUP publishes scholarly books and journals in many fields. Among its publications are those identified on Exhibit B to this Complaint as "OUP Items."

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 14.

15. Plaintiff Sage publishes scholarly books and journals in the sciences and social sciences. Among its publications are those identified on Exhibit B to this Complaint as "Sage Items."

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 15.

16. Plaintiff Wiley, together with its affiliated companies, publishes each year thousands of scholarly books and hundreds of scholarly journals in a number of fields, including but not limited to chemistry, physics, business, and certain social sciences. Among its publications are those identified on Exhibit B to this Complaint under the hearing "Wiley Items."

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 16.

17. The Blackwell Items, Elsevier Items, OUP Items, Sage Items and Wiley Items are sometimes referred to collectively hereinafter as the "Plaintiffs' Work."

**ANSWER:** Defendants admit only that plaintiff has set forth a defined term in its Amended Complaint, and deny any remaining allegations in paragraph 17.

18. The books that plaintiffs publish are written or edited by scholars in their respective fields. The journals that plaintiffs publish consist of primarily of articles written by scholars in their respective fields and peer-reviewed by fellow scholars.

**ANSWER:** Defendants admit that at least some of the works published by some of the plaintiffs are written or edited by scholars in their respective fields. Defendants deny the remaining allegations of paragraph 18.

19. Each Plaintiff, as a matter of standard practice, requires that the authors who write is books or contribute to its journals assign copyright to the publisher or grant the publisher exclusive rights of reproduction and distribution within the United States. This enables each plaintiff to seek out the greatest number of markets for the book, article or journal concerned and for its contents, thereby maximizing dissemination of the article, journal or book.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 19.

20. Specifically, but without limitation of the foregoing, Blackwell, Elsevier, OUP, Sage, and Wiley, or their respective predecessors in interest as the case may be, have, in connection with the books, articles and journals specifically named in this Complaint, secured transfers of copyright (either outright assignments or exclusive licenses) fro the authors of the contents thereof. All copyrights thus transferred are those involved in this civil action.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 20.

21. Plaintiffs invest heavily in their book and journal publishing programs. Each year they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of journal editorial offices.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22. The revenue from their respective publications represent the majority, in most cases the vast majority, of plaintiffs' respective annual revenues, and is therefore critical to their financial health.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23. Plaintiffs will suffer serious financial injury if their copyrights are not respected. A substantial decline in their income could cause plaintiffs to cease publication of one or more deserving books or journals. This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving work.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 23. Answering further, defendants deny that plaintiffs are entitled to revenues they would charge for the exercise by the students and professors of their rights of fair use, and note that the U.S. Supreme Court has determined that copyright owners suffer no legal injury when their works are copied in connection with the exercise of fair use.

24. In the case of infringed books, not only the publishers but also the authors receive income from such books, and depriving authors of that income can have serious repercussions for them and their work.

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 24.

25. As part of their program of protecting their copyrights, plaintiffs routinely register their copyrights. The books and journal issues identified in this Complaint all bear copyright notice, and the plaintiffs' have registered copyright in all of them, as indicated on Exhibit B, with the exception of Wiley's book *Managing Ambiguity and Change* and Elsevier's journals *Journal of Criminal Justice, Information Processing & Management, Interacting with Computers,* and *Social Science and Medicine,* which are non-U.S. works and therefore not required to be registered as a prerequisite to suit. *See* 17 U.S.C. § 411 (registration required only for "United States works" as such term is defined in 17 U.S.C. § 101).

**ANSWER:** Defendants are without information sufficient to form a belief as to the truth of the allegations of paragraph 25.

26. Defendant Excel is one of a number of commercial companies that offers to provide, on demand, photocopies of individual chapters from books, and other similar material. These companies are known in the marketplace as "copy shops."

**ANSWER:** Defendants deny the allegations of paragraph 26. Answering further, prior to offering facilities to allow students to reproduce copies of the readings assigned by their professors, Defendant Excel read the decision of the U.S. Court of Appeals for the Sixth Circuit in *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381 (6th Cir. 1996), *cert. denied,* 117 S.Ct. 1336 (1997) and noted that five of the judges determined that a commercial copy shop was lawfully entitled to reproduce readings assigned by professors for their students, and that the eight judges constituting the majority did not rule that the students were not free to make their own copies. Indeed, Excel determined that there was nothing in the court's decision that limited the right of the students to make their own copies of the materials selected by their professors. Excel believes it has conducted its business in accordance with that decision for the past nine (9) years and believes that the portion of the U.S. Copyright Act that permits the reproduction of materials "for purposes such as teaching (including multiple copies for classroom use)" must permit copying by the students or else that part of the law would have no meaning, and does not require that the students purchase their own photocopy machines or otherwise limit the places available to students to make their fair use copies.

27. Like many copy shops in towns and cities where colleges and universities are located, Excel does a substantial business in "coursepacks." The contents of a typical coursepack include journal articles, excerpts from books, and perhaps other printed materials, selected by the teacher of a course a required reading for that course. The teacher delivers the course syllabus, and/or the materials to be copies, to the copy shop. The copy shop copies the portions identified by the teacher, and binds them in a plastic ring binder or other inexpensive binding. The copy shop then sells these coursepacks to students at a profit.

**ANSWER:** Defendants admit that some coursepacks include journal articles, excerpts from books, and perhaps other printed materials, selected by the teacher of a course a required reading for that course. Defendants deny the allegations of paragraph 27.

28. The copy shop is required to arrange for permission to copy the materials in coursepacks that it reproduces. Frequently, copy shops do so through an independent agency known as Copyright Clearance Center, Inc. ("CCC"), of Danvers, Massachusetts.

**ANSWER:** Defendants are without information sufficient to form a belief as to the allegations of paragraph 28.

29. In order to expand and facilitate the distribution of their publications and compliance with their copyrights, plaintiffs have licensed CCC, a non-profit intermediary, to authorize commercial photocopying of articles from plaintiffs' journals or excerpts from plaintiffs' books. Any copy shop such as Excel can comply with copyright by reporting its coursepack photocopying activities to CCC and paying a copyright fee for each copy made. CCC in turn reports aggregate licensing information to plaintiffs, and pays plaintiffs the copyright fees collected, less an agreed amount to compensate CCC for its services. Many, if not all, of the plaintiffs will also respond directly to requests for permission to use portions of their materials in coursepacks.

**ANSWER:** Defendants are aware that the CCC exists and does not believe that the students are required to pay, or that Excel is required to collect, fees for noninfringing classroom use or for copies made by students who are otherwise permitted to access and copy such materials pursuant to licenses paid to publishers by The University of Michigan. Defendants are without information sufficient to form a belief as to the truth of the remaining allegations of paragraph 29.

30. Defendants, however, have been engaged in routine and systematic reproduction of materials from plaintiffs' publications, without seeking permission from plaintiffs or from CCC.

This infringement takes the form of (without limitation) coursepacks for courses taught at the University of Michigan. The coursepacks currently known to plaintiffs to contain such material are those identified on Exhibit B.

    **ANSWER:** Defendants deny the allegations of paragraph 30.

    31. Plaintiffs are informed and believe that defendants do not themselves perform the copying for each of their customers. Rather, defendants require each student to copy the pages of each coursepack him/herself on Excel's premises, using Excel's copying machines. This is an explicit attempt to circumvent copyright law. Miler has stated publicly that he believes such an arrangement exempts his business from the rules laid down in past cases involving copy shops making unauthorized coursepacks. However, by providing the means of reproduction and charging for their use, defendants are just as much engaged in infringement as if their own employees made the copies and their conduct constitutes willful infringement,

    **ANSWER:** Defendants admit that Defendants make no copies of coursepacks for students; provided that, on occasion, when an individual with physical disabilities requests assistance with the photocopying process (for example, when they are in a wheelchair and cannot operate the machine), Excel has assisted those individuals. Defendants do not review the content of the material selected by the professors for their students, or the extent of the copying by the students (or other third parties) on photocopy machines leased to Excel. Defendants deny the remaining allegations of paragraph 31. Answering further, Defendants have never attempted to "circumvent" the U.S. copyright law but instead to conform the practices of Excel to the law. This is in contrast to plaintiffs, who seek to prevent students from making fair use copies and to charge students for making fair use copies, who seek to deny students the ability to make copies of materials for which publishers have already been paid a license fee by The University of Michigan, and who seek to extend their copyrights to cover activities that are outside the scope of their copyrights.

32. Plaintiffs reallege and incorporate herein by reference paragraphs 12-31 of this Complaint.

ANSWER:    Defendants hereby incorporate by reference their answers to paragraphs 1 – 31.

33. Plaintiffs have identified at least 41 separate and distinct counts of specific unauthorized copying of which plaintiffs have knowledge.  Each instance of unauthorized reproduction and sale of plaintiffs' materials is a separate count in this action.

ANSWER:    Defendants deny the allegations of paragraph 33.  Answering further, Defendants have discovered that Plaintiffs allege, as infringement of "their" copyrights, the copying of materials authored by a professor at The University of Michigan who had assigned his material for use by the students enrolled in his course, including when his course was taught by one of his colleagues.  Plaintiffs seek to prevent authors from using their own works, and from allowing their own students to use the works, in connection with the classroom teaching by that author.

34. Each infringed work is identified on Exhibit B to this Complaint.  From left to right, the columns of Exhibit B state the number of the county, the coursepack in which the item of the plaintiffs' was reproduced by defendants without permission, the professor of said course, the title of the material infringed, the chapter or article from the larger book or journal from which such material was copied (if applicable), the author of the material infringed, the date the work was published, the numbers of the pages infringed (if known), and the copyright registration number.  All coursepacks identified in Counts 1-41 are for courses taught at the University of Michigan.

ANSWER:    Defendants admit that portions of Exhibit B identify materials that have been delivered to Excel by University of Michigan professors for use by their students.  Some

portions of Exhibit B do not exist in the records of Excel. Defendants deny the remaining allegations of paragraph 34.

35. Plaintiffs are informed and believe that this unauthorized copying is representative of a much larger pattern of unauthorized copying, which when examined will reveal infringements of numerous other works owned by them, and plaintiffs will amend this Complaint to add such works after discovery has occurred,

**ANSWER:** Defendants deny the allegations of paragraph 35.

36. Defendants have at all times have been fully aware of their obligations under copyright law. Defendants' infringement of plaintiffs' copyrights, including but not limited to those set forth on Exhibit B, has been willful.

**ANSWER:** Defendants admit that they believe that their actions are lawful and consistent with U.S. copyright law, and that Excel's policies and procedures were developed after a review of the leading copyright decision on coursepacks by the U.S. Court of Appeals for the Sixth Circuit. Defendants deny the remaining allegations of paragraph 36.

37. Defendants are responsible in whole or in part for establishing the policies and procedures that have led to the infringing conduct described herein. At all times relevant they have been in a position to control the infringement described in this Complaint, and have had a direct financial stake in the infringing activity.

**ANSWER:** Defendants admit that Excel is responsible for its policies and procedures and deny the remaining allegations of paragraph 37.

38. Plaintiffs have suffered substantial harm from defendants' unauthorized conduct. Plaintiffs will continue to suffer harm if defendants are permitted to continue their infringing activities.

**ANSWER:** Defendants deny the allegations of paragraph 38. Indeed, the U.S. Supreme Court has noted that there is no legal harm when such permission fees are not paid,

because "If the use is otherwise fair, then no permission need be sought or granted." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)

WHEREFORE, Defendants request that this Court deny plaintiffs the relief requested.

## DEFENSES

1. Plaintiffs have failed to state a claim upon which relief can be granted.

2. Plaintiffs' claims are barred on account of the contracts entered into by the plaintiffs that authorize access to and copying of articles and other materials by students and professors.

3. Plaintiffs' claims are barred by the doctrine of fair use.

4. Plaintiffs' claims are barred by the doctrine of implied rights.

5. Plaintiffs' claims are barred by the doctrine of unclean hands.

6. Plaintiffs' claims are barred by the doctrine of copyright misuse.

7. Plaintiffs' claims are barred by the doctrine of *de minimis* copying.

8. Plaintiffs' claims are barred by the doctrine of *laches*.

9. Plaintiffs' claims are barred by the doctrine of beneficial ownership of copyright.

10. Plaintiffs' claims are barred by the doctrine of acquiescence.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants request a trial by jury of all issues so triable.

                                                Respectfully submitted,

                                                <u>s/Susan M. Kornfield</u>
                                                Susan M. Kornfield (P41071)
                                                Alan N. Harris (P56324)
                                                Bodman LLP
                                                201 South Division Street, Suite 400
                                                Ann Arbor, Michigan  48104
                                                Telephone:  (734) 761-3780
                                                Facsimile:  (734) 930-2494
August 13, 2007                              Primary Email:  skornfield@bodmanllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

kfink@psedlaw.com

I declare under penalty of perjury that the foregoing statements are true and correct.

s/Susan M. Kornfield
Susan M. Kornfield (P41071)
Alan N. Harris (P56324)
BODMAN LLP
201 South Division Street, Suite 400
Ann Arbor, Michigan 48104
Telephone: 734-761-3780
Primary Email: skornfield@bodmanllp.com