UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BLACKWELL PUBLISHING, INC., ELSEVIER, INC., OXFORD UNIVERSITY PRESS, INC., SAGE PUBLICATION, INC. and JOHN WILEY & SONS, INC. | Case No. 07-12731<br><br>Honorable Avern Cohn |
| Plaintiffs, | |
| v. | **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| EXCEL RESEARCH GROUP, LLC d/b/a EXCEL TEST PREPARATION, COURSEPACKS & COPIES, and NORMAN MILLER, individually | |
| Defendants. | |
| _____/ | |
| PEAR SPERLING EGGAN & DANIELS, P.C.<br>Karl V. Fink (P13429)<br>24 Frank Lloyd Wright Drive<br>Ann Arbor, Michigan 48105<br>Telephone: (734) 665-4441<br>Attorneys for Plaintiffs | BODMAN LLP<br>Susan M. Kornfield (P41071)<br>Alan N. Harris (P56324)<br>201 South Division Street, Suite 400<br>Ann Arbor, Michigan 48104<br>Telephone: (734) 761-3780<br>Facsimile: (734) 930-2494<br>Attorneys for Defendant |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

1. Excel Research Group, LLC ("Excel"), is a Michigan limited liability company owned and operated by Normal Miller. Excel was originally formed to help students prepare for certain standardized tests, such as the SAT, ACT, LSAT, MCAT, and the like. Mr. Miller has learned a great deal about the role of course handouts in education, including his own experiences as an owner of Excel (and his interactions with students and professors), his attendance at college courses using copies of class handouts and coursepacks, his experience as a

2.

teacher of his own course and as a teaching assistant, his creation of teaching materials in connection with Excel's test preparation services, and his auditing of courses using class handouts copied at Excel. Exhibit 8, Declaration of Norman Miller, at ¶¶ 1-2. [1]

2. Excel has been in the business of providing photocopying equipment and ancillary services to students and professors at The University of Michigan ("University" or "Michigan") for ten (10) years. "Ancillary services" means physically accepting from the professors the readings selected, excerpted, and compiled by the professors, checking to see that the pages are not bent or blurry and will photocopy well, retaining a master copy of the handouts for the benefit of the students, handing the master to students who requests it and who confirm in writing that they are a student enrolled in the course, ensuring the proper operation of the photocopy machines and refilling paper and toner, binding copies of documents upon request, and answering any student questions as to the operation of the photocopy machines. *Id*., ¶ 3.

3. Professors determine the assigned readings for the semester, the order in which those readings are assigned, and how the readings are integrated with the course lectures, other readings, class exercises, guest lectures, and group communications and activities. The readings are typically journal articles, newspaper articles, excepts from books, syllabi, sample tests, manuscripts, lab notebooks, bibliographies, tables of contents, PowerPoint slides, summaries, and unpublished articles. The Michigan professors selected only the amount necessary to accomplish the educational purpose for selecting the work and do not use the copied material as

---

[1] All references to "Exhibits" are direct references to Exhibits as attached to Brief in Support of Defendants' Motion for Summary Judgment.

1.

a substitute for assigning the purchase of any work. The professors do not assign excerpts when they would otherwise assign the book from which the excerpt was taken. *Id*., ¶ 4.

4. Professors have advised Excel that, in order to derive the greatest benefit from their assigned readings (and so that they can highlight passages and write comments in the margins), students need physical copies of their assigned course handouts. Some professors deliver to Excel copies of the readings they have selected for a particular course for a particular semester, and advise their students that they can access the handouts at the library, at Excel, and (in some cases) electronically. *Id*., ¶¶ 4-5.

5. The identity of the authors and publishers of the content, when such information is made available to Defendants, is included with the excerpts copied by the students. The content of the author is not altered, but is presented in the same manner as authorized by the author and publisher. *Id*., ¶ 6.

6. Professors use the excerpts to expose the students to, and to engage them with, the ideas, facts, perspectives, theories, concepts, principles, and imagination expressed in the excerpts. There is interplay among the assigned readings and other course activities – and a particular excerpt will take on a new meaning because of its juxtaposition and use with other course content. The excerpts themselves are often scholarly works, rich with quotations from and references to other content. *Id*., ¶ 7.

7. Students using Excel's copying equipment sign statements attesting to their status as students and their enrollment in a particular course, and make their own copies. Excel does not make the students' personal copies of the professors' assigned readings. Excel has declined to

3

1.

make copies of materials at the request of grad students who wish to learn more about the subject matter of a course but who are not enrolled in a course, and has declined to make copies for other professors who have asked for courtesy copies of the readings. *Id*., ¶ 8.

8. Students seek an efficient method of copying their assigned readings in an environment where the equipment works, the master copy is accessible and pages are not stolen or torn or blurred or cutoff, the copies they make are of good quality, and the price is as low as possible. Many students have asked Excel to make their copies for them, and have offered to pay in order to avoid standing in line and making their own copy, but Excel has not made such copies in its ten years of providing services to students and professors. *Id*., ¶ 10.

9. The students and professors use the excerpts in connection with their educational activities. The purpose of the use of the excerpts is not-for-profit educational use.

10. Excel sells no product. Excel has no inventory of products. It does not stock or sell course packs. It does not create or sell compilations. It does not create or sell books. Excel makes no sales of excerpts or articles to the public. Excel does not make the personal copies for the students. *Id*., ¶ 11.

11. Many professors have expressed their frustration with a system that charges students fees for the making of copies for classroom use, for purposes such as teaching. The professors assert that the fact that some copy shops act as agents for publishers and charge students two and three times the copying costs in permission fees is unfair and unreasonable, as it denies the legal benefits to those for whom they were reserved and eliminates their access to materials the professors would otherwise make available. *Id*., ¶ 9.

12. Students believe that any system that permits them to copy material when they are standing on a floor at the University library, and at a higher price, but prohibits them from copying it when they are standing on the premises of Excel, is simply ridiculous, illogical, and anti-educational.  Students pay hundreds and hundreds of dollars to purchase books, and are willing to pay for the copying of their handouts.  The students believe that it is wrong to extract fees from them, and to pay publishers, when their use is otherwise a fair use.

13. Each Plaintiff is a party to a written agreement either directly with the University of Michigan or with a library consortium which includes the University of Michigan.  Michigan also is party to a License Agreement with JSTOR.  Exhibit 1.   JSTOR is a not-for-profit organization with a dual mission to create and maintain a trusted archive of important scholarly journals, and to provide access to these journals as widely as possible. JSTOR offers researchers the ability to retrieve high-resolution, scanned images of journal issues and pages as they were originally designed, printed, and illustrated.  *See* www.jstor.com.  There are approximately 750 journal titles, representing thousands of articles, available through JSTOR.  *See* *http://www.jstor.org/about/all.list.html*.  Under the JSTOR terms of use and License Agreement, faculty and students, among others, are granted broad on-line access rights, as well as the right to download copies of articles, and the right to print articles from the JSTOR database for personal use. Exhibit 1, ¶ 1.  The express purpose of JSTOR is to "facilitate access to . . . journals by Authorized Users." *Id.*, ¶ 3.2.  *See* Exhibits 1-6 (collectively, the "Contracts").

14. Under the Contracts, Plaintiffs receive payments totaling millions of dollars.  See Exhibits 1-6.

1.

15. Under the Contracts, Michigan, its students and faculty are granted broad access to, and use of, a wide range of works in which these plaintiffs claim to hold copyright. The rights granted by these Plaintiffs to UM's students and faculty include rights of electronic access, right to print copies of the works, right to download copies of the works, and the right to use copies of the licensed works in course packs or similar educational materials. *See* Exhibits 1-6.

16. Plaintiff Blackwell is party to a Site License Agreement with the Michigan Library Consortium, a group of academic institutions that includes Michigan. ("Blackwell Agreement," Exhibit 2). The Blackwell Agreement grants "Authorized Users" (including Michigan staff and students) access to a wide range of Blackwell titles "for the purposes of research, teaching and private study." The broad grant of rights includes Michigan's rights to make back-up copies, temporary local electronic copies, and provide single printed or electronic copies of single articles at the request of students (or other Authorized Users); and students' rights to search, view, retrieve and display the licensed material; electronically save parts of the licensed material for personal use; print single copies of parts of the licensed material; and distribute single copies of parts of the Licensed Material in print or electronic form to other Authorized Users. Exhibit 2, Blackwell Agreement, ¶¶ 1.1, 3.1.

17. The Blackwell Agreement expressly provides that Authorized Users may "Incorporate part of the Licensed Material in printed or electronic Course for Study Packs for the use of Authorized Users in the course of instruction" and permits systematic copying for the preparation and copying of coursepacks. *Id*., ¶¶ 3.3.1, 4.2.

18. Plaintiff John Wiley & Sons, Inc. ("Wiley") is party to an Enhanced Access License with the Committee on Institutional Cooperation ("CIC") through which it licenses access to the

6

1.

electronic version of products and services of Wiley Interscience. Exhibit 3, "Wiley Agreement.". Michigan is a participating member in CIC. *Id.* The Wiley Agreement grants "Authorized Users" (including faculty and students) the right to download, view, copy, save, store, and print out single copies "of individual articles, chapters or entries in the Licensed Electronic Product for the Authorized User's own personal use, scholarly, educational or scientific research or internal business use." *Id*. ¶¶ 3, C1(a). The Wiley Agreement expressly allows Authorized Users to download and print multiple copies of materials from Licensed Electronic Products for the purpose of "making a multi-source collection of information for classroom use (course–pack) to be distributed to students at the Licensee's Institution free of charge or at a cost-based fee." *Id.*, ¶ C1(d).

19. Plaintiff Sage Publication, Inc. ("Sage Publication") is party to an agreement with the Michigan Library Consortium, Exhibit 4 ("Sage Agreement") pursuant to which "Authorized Users" (including faculty, staff, and students) can "print a reasonable portion of the Licensed Materials," "use a reasonable portion of the Licensed Materials in the preparation of Course Packs or other educational materials" and "charge a reasonable fee to cover costs or costs of copying or printing portion of Licensed Material for Authorized Users." Exhibit 4, Section IV.

20. Under Plaintiff Elsevier, Inc.'s ("Elsevier") contract with Michigan, (Exhibit 5, "Elsevier Agreement"), "Authorized Users" (including Michigan students, faculty and staff) are granted broad grant of rights to (i) access, search, browse and view the licensed products; (ii) "print and download a reasonable portion of articles, abstracts, records or parts of chapters from the Licensed Products ("Excerpts"); and (iii) transmit Excerpts to other Authorized Users and to third-party colleagues for scholarly or research use. Exhibit 5, ¶ 1.2.

21. Plaintiff Oxford University Press, Inc. ("OUP") is party to a Subscriber Agreement and Terms of Use Agreement (Exhibit 6, "OUP Agreement") with Michigan under which "Authorized Users" (including students, faculty, library patrons, or any person physically present on Michigan's premises) may (i) access Licensed Works by means of a secured network for the purposes of research, teaching, private study; (ii) download and save portions of the Licensed Works; (iii) print out single copies of the licensed works; (iv) distribute copies of the Licensed Works to other Authorized Users; (v) incorporate portions of the Licensed Works into printed course packs for use by its students, and (vi) create "collections or compilations of printed materials … assembled by faculty or staff of the Subscriber, if the Subscriber is an educational institution, for use by students in connection with a specific course of instruction offered by the Subscriber to its students." Exhibit 6, ¶¶ 1.1, 3.2.

22. None of the agreements with these Plaintiffs state that course packs can only be generated on University-owned copiers, or that students cannot make their copies wherever it is convenient for them. *See* Exhibits 1-6.

23. There is no "free" mechanism under which students receive their course handouts. All copying of assigned readings costs the students money. If they log onto the Michigan computer system and mark a file for printing, the students are charged by the University. If they purchase a copy card for use at the University library, they pay about 10 cents per page. The copiers on the premises of the University libraries and in various locations around the campus for use by students are owned by commercial entities that contract with Michigan. Those vendors charge and receive payment for copies made on their machines. The cost of photocopying using the "on-campus" machines is greater, on a per page basis than the

cost of copying at Excel (about 7-8 cents per page). Excel makes no more money for copyrighted content than public domain or a blank page. The University also contracts with commercial entities to maintain and repair the machines, to supply paper and toner. The University of Michigan allocates Eighteen Million Dollars per year for electronic access to literary content, journal articles, books, films, sound recordings, and other acquisitions by the library system. http://www.loc.gov/library/bigheads/source/2007-Jun/UMich.pdf.

24. Before Mr. Miller decided to expand his services to students by making photocopying equipment and ancillary services available, he read a variety of legal materials involving the dispute over coursepacks prepared by Michigan Document Services, Inc., including the petition for certiorari filed with the U.S. Supreme Court; affidavits by professors and students, amicus briefs, briefs filed by the parties, the oral argument transcript (Exhibit 7), and the *en banc* decision in *Princeton University Press v. Michigan Document Services, Inc.,* 99 F.3d 1381 (6th Cir. 1996), *cert. denied,* 117 S.Ct. 1336 (1997) ("*MDS*"). He noted that:

(a) copying of excerpts by students was a not-for-profit copying

(b) the students and professors could have claimed a fair use for their copying,

(c) students were users of the excerpts they copied,

(d) the infringing activity was the copying by a for-profit company, not the copying by students or professors,

(e) the publishers expressly declined to argue that the professors could not make these copies on rented photocopy machines,

(f) the publishers did not dispute that the professor could make multiple copies for classroom use on rented photocopy machines, and

9

(g) the publishers declined to argue that the professors could not charge the students fees for the copying of the excerpts. Exhibit 1, ¶ 13; Exhibit 7.

Respectfully submitted,

s/ Susan M. Kornfield
Susan M. Kornfield (P41071)
Alan N. Harris (P56324)
BODMAN LLP
201 South Division, Suite 400
Ann Arbor, Michigan 48104
Telephone: (734) 761-3780
skornfield@bodmanllp.com

December 3, 2007                Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

kfink@psedlaw.com

I declare under penalty of perjury that the foregoing statements are true and correct.

s/ Susan M. Kornfield
Susan M. Kornfield (P41071)
BODMAN LLP
201 South Division, Suite 400
Ann Arbor, Michigan 48104
Telephone: (734) 761-3780
skornfield@bodmanllp.com