**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| BLACKWELL PUBLISHING, INC., ELSEVIER, INC., OXFORD UNIVERSITY PRESS, INC., SAGE PUBLICATION, INC., and JOHN WILEY & SONS, INC., | Case No. 07-12731<br><br>Honorable Avern Cohn |
| Plaintiffs, | |
| v. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| EXCEL RESEARCH GROUP, LLC d/b/a EXCEL TEST PREPARATION, COURSEPACKS & COPIES, and NORMAN MILLER, individually, | |
| Defendants. | |

_____/

KOTIN, CRABTREE & STRONG, LLP
William S. Strong
One Bowdoin Square
Boston, Massachusetts 02114
Telephone: (617) 227-7031
Attorneys for Plaintiffs

BODMAN LLP
Susan M. Kornfield (P41071)
Alan N. Harris (P56324)
201 South Division Street, Suite 400
Ann Arbor, Michigan 48104
Telephone: (734) 761-3780
Facsimile: (734) 930-2494
Attorneys for Defendants

PEAR SPERLING EGGAN & DANIELS, P.C.
Karl V. Fink (P13429)
24 Frank Lloyd Wright Drive
Ann Arbor, Michigan 48105
Telephone: (734) 665-4441
Attorneys for Plaintiffs

_____/

**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

From Plaintiffs' Brief we learn: (1) they do not challenge the copying and use of the copyrighted materials by students and faculty of The University of Michigan ("Michigan"); (2) they acknowledge they entered into contracts that permit Michigan students and faculty to copy materials in which Plaintiffs hold copyright ("Contracts"); (3) the Contracts do not limit where the students and faculty may make their authorized copies; (4) the Contracts expressly permit copying by Michigan, its students and professors, of at least some (Plaintiffs admit to 8) of the disputed items; (5) pursuant to the Contracts, Michigan has paid Plaintiffs millions of dollars; (6) the students, and not Excel, make the copies of the readings selected by their professors; (7) Plaintiffs do not dispute that there can be no liability for contributory infringement without a finding of liability by a direct infringer; and (8) some faculty place on reserve at Michigan's library the same materials they provide to Excel. *See, e.g.*, Plaintiffs' Exhibit D.

**A.  The Contracts Do Not Limit the Location of Copying By Students, and The University of Michigan Bargained for that Result.**

Plaintiffs' argument rests on the contention that the copying outside of the University is not permitted by the Contracts (though they have not sued Michigan for breach of contract). Plaintiffs ask the Court to construe the Contracts *to include a limitation* as to *where* the authorized copies can be made despite there being no such limitation in the Contracts. The rules of contract construction reject such an approach. *See* Defendants' Brief in Support of Their Motion for Summary Judgment, pp. 5-6. To the contrary, Michigan bargained for (and secured) the right for its students and faculty to reproduce copies of the publishers' copyrighted materials "anytime, anywhere, anyhow." As explained by the University Librarian, this flexibility was *required* because Michigan students, professors, scholars, and researchers are located all over the world, and can access the Michigan library network worldwide. Michigan would not have

1

entered into the Contracts and paid Plaintiffs millions of dollars if the students were so limited. Declaration of Paul Courant, attached as Exhibit A, ¶¶ 10, 12, 13, 22.

Michigan has reviewed the Contracts, its collections, and the books available *via* Google book search, and determined that at least 37 of the 41 items about which Plaintiffs complain are freely or readily available, and that Michigan has paid for its students and faculty to have access to these materials several times over. *Id.* at ¶ 21. As a result, the vast majority of the copying at issue is indisputably permitted, and the few remaining items are the subject of fair use.

**B.    There is No "Not-for-Profit" Copying of Student Assigned Readings.**

Although Plaintiffs suggest that it is improper for Excel to charge students for using Excel's photocopiers, there is no "not-for-profit" copying of assigned readings at the University. The photocopiers located at Michigan's libraries are owned by third party commercial entities, which – like Excel – provide the photocopy machines, paper, toner, and services, for a fee. Students pay for the materials copied at Michigan, whether by having their personal accounts charged, or by purchasing copy cards for use with the commercial photocopy machines, or by putting money in the commercial photocopy machines. *Id. at* ¶ 15. Plaintiffs' "someone is making money" approach to copyright law ignores facts and reality – if their theory is adopted, the contractual rights Plaintiffs granted would be illusory, and third party photocopy suppliers would be liable for infringement resulting from copying on college campuses.

**C.    The Master Copy is an Intermediate Copy.**

Plaintiffs advance the simplistic proposition that "this case is *Michigan Document Services*" in an effort to avoid summary judgment, ignoring the fact that the second sentence of the *en banc* decision establishes that the case is about a company that **reproduced** substantial

2

segments of copyrighted works for coursepacks and **sold the coursepacks** to students; whereas Excel neither produces nor sells coursepacks, has no inventory, and sells no goods. *See Princeton Univ. Press v. Michigan Document Services, Inc.,* 99 F.3d 1381 (6th Cir. 1996). There is no legal support for the proposition that a court should isolate the *copying* by Excel of a master copy of the professors' assigned readings from the *use* of that master by the students as a step in their copying of the assigned readings.

Section 107 of the Copyright Act expressly limits the rights of copyright holders – not users – and expressly permits the making of multiple copies for classroom use. Not only does it not prohibit intermediate copying, it expressly permits copying, adapting, publicly distributing copies, publicly performing, publicly displaying, and the exercise of all the other rights of copyright holders. The U.S. Supreme Court supports the claim of fair use for classroom copying by noting that the "straight reproduction of multiple copies for classroom use" was the sort of fair use where it was "obvious" that the defendant need not make a transformative use of the copied material. *Campbell v. Acuff-Rose Music,* 510 U.S. 569, 579 n11 (1994). No court *ever* has prohibited a student from making their fair use copies at any location convenient to them.

Plaintiffs do not challenge that there is no legal liability for providing support to those whose copying is lawful, or that the articles and excerpts at issue are selected, copied, and used by professors and students at Michigan in connection with their educational activities. Plaintiffs do not dispute that the sole purpose of the master copy is to facilitate students making their personal copies from a stack of papers that are not torn, bent, or otherwise unsuitable for copying efficiently. Backed into a legal corner, Plaintiffs point to Excel and ask the Court to disregard those who directly copy the assigned readings.

3

A fundamental flaw in this argument is illustrated by the quote from constitutional scholar Thomas Reed Powell: "A legal mind is a mind that can think of one of two inseparably connected things without thinking of the other." Here, Plaintiffs request that the Court do just that – look at only Excel's intermediate copying and not the fair use by the students. Case law is clear that "intermediate" or "incidental" copying is not an infringement where the use of the copy is not an infringement. In *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605 (2d Cir. 2006), the defendant created a master of the plaintiff's copyrighted poster in order to incorporate a smaller version of that poster into defendant's publication. In *Kelly v. Arriba Soft Corp.*, 336 F3d 811 (9th Cir. 2003), a search engine copied plaintiffs' copyrighted images to create low-resolution versions that were then uploaded into a searchable database. In *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000), Connectix made multiple copies of Sony's copyrighted software in order to reverse engineer it and create a competitive (but noninfringing) product. In all these cases, the courts have no trouble seeing the intermediate copy as inseparably connected to the lawful use. This is precisely the issue here.

This Court should reject Plaintiffs' attempt to surgically remove the lawful step of intermediate copying from the lawful copying by the professors and students in connection with the exercise of their fair use rights – uses not challenged in this litigation.[1] Under the correct framework and legal analysis, Plaintiffs' case fails as a matter of law.

---

[1] Plaintiffs' suggest, again without authority, that Excel engages in a "distribution" of copies of Plaintiffs' works when it hands the master to the student and when the student pays. It is sufficient to point out that § 107 permits a fair user to exercise all the rights of a copyright holder. *See also Quality King Distribs., Inc. v. Lanza Research Int'l, Inc.,* 523 U.S. 135 (1998) (all §106 rights subject to all of the other provisions of "sections 107 through 120" [now 122]).

Plaintiffs advance a kind of Wizard of Oz "pay no attention to the man behind the curtain" argument – they ask the Court to pay no attention to the copying by the professors and students because Plaintiffs have not used the professors and students; they ask the Court to pay no attention to the millions of dollars they have accepted from the University of Michigan so that the students could make these copies; they ask the Court to disregard the express language in the U.S. Copyright Act that limits the rights of copyright holders and that supports copying for purposes such as teaching. Plaintiffs want this Court to adopt a rule which is tantamount to finding a printer responsible for libel where the speaker engaged in protected First Amendment speech. The speaker and the means of dissemination are inextricably intertwined.

Plaintiffs state that they "could, but do not, oppose summary judgment," Plaintiffs' Brief at 2, and "do not waive their request for relevant discovery." Yet Rule 56(f) of the Rules of Civil Procedure governs the basis for an opposition due to a claimed lack of discovery, and Plaintiffs have not submitted a 56(f) affidavit – *or any affidavit*. Plaintiffs submit **no** admissible evidence whatsoever; the factual record consists solely of Defendants' Declarations. Plaintiffs' criticisms are legally insufficient, and their unsupported attachments to their brief create no genuine issue of material fact. This Court should grant Defendants' Motion for Summary Judgment.

February 8, 2008

Respectfully submitted,

/s/ Susan M. Kornfield
Susan M. Kornfield (P41071)
Alan N. Harris (P56324)
BODMAN LLP
201 South Division, Suite 400
Ann Arbor, Michigan 48104
Tel: (734) 761-3780
Fax: (743) 930-2494
skornfield@bodmanllp.com

# CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2008, I electronically filed the foregoing Defendants' Reply Brief in Support of Their Motion for Summary Judgment, with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Karl Fink, kfink@psedlaw.com; Amy C. Mainelli Burke, aburke@kcslegal.com; and William Strong, wstrong@kcslegal.com.

I declare under penalty of perjury that the foregoing statements are true and correct.

/s/ Susan M. Kornfield
Susan M. Kornfield (P41071)
Alan N. Harris (P56324)
BODMAN LLP
201 South Division, Suite 400
Ann Arbor, Michigan 48104
Tel: (734) 761-3780
Fax: (743) 930-2494
skornfield @bodmanllp.com