UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
OXFORD UNIVERSITY PRESS, INC.,
SAGE PUBLICATIONS, INC., and
JOHN WILEY & SONS, INC.,

       Plaintiffs,

vs.

EXCEL RESEARCH GROUP, LLC d/b/a
EXCEL TEST PREPARATION,
COURSEPACKS, & COPIES and
NORMAN MILLER, individually,

       Defendants.
_____/

Civil Action No. 07-CV-12731

Hon. Avern Cohn

Mag. Morgan

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs submit this Reply Brief in support of their Motion for Partial Summary Judgment. Simply put, defendants' Response to plaintiffs' motion fails to rebut any of plaintiffs' facts or legal arguments, or provide any legal justification for defendants' conduct.

**1.     Plaintiffs' Statement of Facts Stands Unrebutted.**

If defendants disagreed with any facts set forth in Plaintiffs' Statement Of Undisputed Facts (Docket #44, pp.21-32), they would presumably have provided "a response to each numbered paragraph in the moving party's statement," summarizing such paragraph and "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon," as required by the Court's Pretrial and Scheduling Order (Docket #41), at p.5. They have not, and the entirety of plaintiffs' Statement must therefore be taken as admitted.[1] This is not a matter of mere formality. Defendants' Statement of Facts (pp. 3-5 of their Response) does not rebut, or for the most part even address, the facts set forth in plaintiffs' Statement.

Unfortunately, what defendants *have* done is scatter troubling misstatements throughout their brief. Among these is that plaintiffs have "sandbagged" them with "last-minute identifying of 34 documents" – when in fact the "34 documents" were all identified over two years ago in the Amended Complaint.[2] Plaintiffs address defendants' misstatements of fact in their Reply to Defendants' Statement of Facts ("RDSF"), submitted herewith.

---

[1] The Order says that all material facts set forth by the moving party "will be deemed to be admitted" unless controverted by such a response  Pretrial and Scheduling Order, at p.6.
[2] Although there are 34 line items in Exhibit A to plaintiffs' Motion, the number of copyrighted works infringed in actually 33. See RDSF,p.3, fn.2. Plaintiffs themselves mistakenly referred to "thirty-four" works in their opening brief, and apologize for the numerical confusion.

1

**2. Defendants Cannot Hide Behind the License Agreements.**

Defendants claim that the publishers' license agreements with the University of Michigan authorized the copying at issue here. However, they do not claim – nor could they – that they are licensees. The licenses apply only to "Authorized Users" – students and other members of the University of Michigan community. Therefore, they are relevant only if (i) the copying at defendants' "Excel" shop was *student* copying, and (ii) this case were thus about defendants' vicarious or contributory liability for such copying. As plaintiffs have shown, this case is not about student copying, but about direct infringement by defendants.

Even if this case were about student copying, defendants have failed to meet their burden.[3] Only four of the 33 works at issue in the pending motion were within the scope of any license agreement, and the license agreements applicable to those four nowhere authorize the copying that occurred here. Twenty-nine works at issue in the pending motion were not covered by any license agreement .[4]

Defendants labor to avoid these plain truths. Concerning the 29 works, they try to suggest there is ambiguity, even an issue of material fact, as to whether they were licensed. On this point they offer no evidence, although it is their burden to do so; rather, they ask the Court to disbelieve sworn, and/or facially obvious, testimony.

As to the four works covered by license agreements, defendants assert that the applicable license – the Elsevier license – allows U of M students to copy the works

---

[3] Defendants' reliance on the license agreements is an affirmative defense. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). They thus bear the burden of showing that the agreements authorized the copying at issue here. *Lulirama Ltd. v. Axcess Broadcast Servs.*, 128 F.3d 872, 884 (5th Cir.1997).
[4] RDSF, pp. 5-7.

anywhere, anyhow, including in coursepacks at Excel. However, that is not what the license says: it permit students to "print" and "download," not to copy at offsite copy shops.[5]

Unable to point to any language in the license agreements that supports their position, defendants re-introduce the Declaration of Paul N. Courant. Professor Courant asserts – also without referring to the specific language of any license – that plaintiffs' position in this action is "reprehensible" and "in derogation of the rights Michigan has contracted to receive and paid millions of dollars to obtain." With all respect to Mr. Courant, a distinguished scholar in his own fields, his opinions as to what the University contracted to receive do not alter the plain language of the license agreements. Defendants have identified no ambiguity that would allow them to introduce parol evidence from Professor Courant. Absent that, the agreements mean what they say, and only what they say, not what one party thinks it bargained for. *U.S. v. Donovan,* 348 F.3d 509, 512 (6th Cir. 2003).[6]

### 3. Defendants Have Conceded the Alternative Basis for Liability: Infringement of Plaintiffs' Distribution Right.

Plaintiffs in their opening brief showed that defendants are liable on one of two grounds. Either they were the true copiers of plaintiffs' works – because they supplied everything but the labor of pushing buttons, and controlled the reproduction process from start to finish – or they were commercially renting or lending the coursepack masters to the students, thereby violating plaintiffs' exclusive rights of distribution under 17 U.S.C. §106(3).

---

[5] See RDSF, pp. 6-7.
[6] Defendants also insert in their Response various excerpts from deposition testimony of Elsevier's and Wiley's 30(b)(6) witnesses. Such testimony has no bearing on the meaning of the agreements, or indeed to anything else at issue in this case. See RSDF, pp. 8-11.

Defendants' Response focuses only on the first ground of liability. They nowhere respond to the second.

Defendants actually admit they were engaged in lending. In an effort to distinguish themselves from the losing defendants in *Princeton University Press v. Michigan Document Services, Inc.*, 99 F.3d 1381, (6th Cir. 1996), they say that "Selling Previously-Made Coursepacks is a Different Business from *Lending a Coursepack Master* and Copying Equipment." [7] However, they do not seem to grasp the implications of their admission. Unauthorized lending is itself a violation of §106(3).

Defendants offer no legal excuse for such conduct. Perhaps they assume that if the student copying were licensed as they claim, its lawfulness would exonerate them by association. But the act of lending/renting is a separate act with its own legal significance, and it is neither justified, nor (absent some sort of complicity) made illegal, by the downstream uses of the recipient of the loan. One who lawfully transfers a copy of a work is not liable for infringement just because the copy is thereafter used for infringing purposes. *Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 1983 U.S. Dist. LEXIS 15936 (W.D. Tex. 1983). Conversely, an infringing loan or rental is not magically sanitized by the borrower's *bona fide* use. Party A might have a license to show a movie to the public, but that would not excuse Party B who, without authority, rents a copy of the film to the licensee, even though the rented copy is used in a lawful manner.[8]

---

[7] Defendants' Response, p. 10, emphasis added.
[8] Even if the student copying were fair use – which defendants suggest only in the most tangential way, and without any analysis of the fair use factors under 17 U.S.C. §107 – the legal result would be the same. For example, it might be fair use for someone to display a copyrighted work publicly in the context of a political speech. That would not excuse someone who, without authority, rented the work to the speaker for that purpose.

In short, defendants have conceded the alternative ground for their own liability. If they are not to be hanged for sheep, they must be hanged for goats. One way or the other, they have infringed plaintiffs' copyrights.

**4.   No Claims Here are Barred by the Statute of Limitations.**

Finally, defendants suggest that some of plaintiffs' 34 claims "may" be barred by the three-year limitation of actions under 17 U.S.C. §507(b). They do not bother to say which.

In fact, it is plain on the face of plaintiffs' pleadings that every infringement sued on occurred within three years prior to June 28, 2007, the filing date of this action. RDSF, p. 13. Defendants' affirmative defense is entirely without merit.

Respectfully submitted,

BLACKWELL PUBLISHING, INC.,
ELSEVIER, INC.,
OXFORD UNIVERSITY PRESS, INC.,
SAGE PUBLICATIONS, INC.,
JOHN WILEY & SONS, INC.,

Plaintiffs,

By their Attorneys:

KOTIN, CRABTREE & STRONG LLP

/s/ William S. Strong

Dated: August 3, 2009     By: __/s/ Amy C. Mainelli Burke_____
William S. Strong, Esq., BBO #483520
Amy C. Mainelli Burke, Esq., BBO#657201
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)

Local Counsel:

Claudia Rast (P40165)
Karl V. Fink (P13429)
Cynthia M. York (P39722)
Pear, Sperling, Eggan & Daniels, P.C.
24 Frank Lloyd Wright Drive
Ann Arbor, Michigan  48105
(734) 665-4441
(734) 665-8788 (fax)

## CERTIFICATE OF SERVICE

I, Amy C. Mainelli Burke, hereby certify that the foregoing Reply was filed with the Clerk of Court through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to those indicated as non registered participants on August 3, 2009.


/s/ Amy C. Mainelli Burke
Amy C. Mainelli Burke